STATE, Appellant v. SPELLS, Respondent

(218 N.W.2d 210)

(File No. 11384. Opinion filed May 22, 1974)

Kermit A. Sande, Atty. Gen., Pierre, for appellant; Gene Paul Kean, State's Atty., Sioux Falls, on brief.

Willy, Pruitt, Matthews & Jorgensen, Steven L. Jorgensen, Sioux Falls, for defendant and respondent.

WOLLMAN, Justice.

A charge of murder was filed against defendant following the death of one Ronald James Nelson on May 14, 1973, as a result of a stab wound. We allowed the state to appeal from a pretrial order of the circuit court suppressing certain evidence that had been taken from defendant after his arrest. SDCL 23-51-5.

At approximately 1:30 a.m., May 14, 1973, Ronald James Nelson, who several days earlier had agreed to furnish the Sioux

Falls, South Dakota Police Department certain information, was shot and stabbed in the J & M Club, a tavern located at 505 South Cliff Avenue in Sioux Falls. Because Nelson had telephoned a police detective from the tavern at approximately 12:30 a.m. requesting that a marked patrol car drive through the parking lot of the tavern "to cool off some of the people who were bothering him", there were a number of police officers stationed in their vehicles near the tavern at the time the shooting and stabbing took place. These officers had noticed a number of motorcycles parked in the parking lot near the tavern.

As two of these officers were positioning their car to observe several motorcycles that were in the process of leaving the parking lot they received a call over their radio that shots had been fired at the J & M Club and that a party had been injured. These officers started following three motorcycles that had left the lot. As they did so a motorcycle pulled out in front of the squad car, whereupon the officers turned on the red light and siren and stopped the driver, later identified as defendant. One of the officers then made an immediate preliminary search of defendant for weapons and discovered a collapsible knife in a small sheath on defendant's right hip. After putting defendant into the squad car, the officer opened the knife and noticed what appeared to be fresh blood on the blade. Defendant was later placed under arrest for public intoxication. He has not contested the validity of the arrest in this proceeding.

Although the exact time does not appear in the record, we will assume for the purposes of this proceeding that defendant was incarcerated at the police station by at least 2 a. m. on May 14, 1973. Shortly before noon that day, officer John Johnson of the police department went to the holding cell of the police station for the purpose of conducting a "strip search" of defendant and three other individuals who had been taken into custody as a result of the incident at the J & M Club. Pursuant to this strip search officer Johnson took the outer clothing that defendant was wearing, consisting of a pair of levis and a T-shirt, and gave defendant a pair of coveralls to wear. Defendant was permitted to retain the cowboy boots that he was wearing at the time. Defendant's clothing was bagged, identified and later sent to the Federal Bureau of Investigation for examination.

The trial court denied defendant's motion to suppress the knife that was taken from him at the time he was first taken into custody, but granted that portion of the motion asking that the clothing taken from defendant during the strip search be suppressed.

 We conclude that the trial court erred in suppressing the items of clothing taken from defendant. Defendant was under valid arrest at the time the clothing was taken from him. Certainly any items taken from his clothing at the time of his arrest would have been admissible in evidence. State v. Lohff, 87 S.D. 693, 214 N.W.2d 80; United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427; Gustafson v. State, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456. More in point is the recent decision of the United States Supreme Court in United States v. Edwards, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771, which involved a remarkably similar factual situation. In that case clothing was taken from the defendant while he was in custody at the city jail approximately ten hours after his arrest, which had occurred at 11 o'clock at night. In holding that the seizure of defendant's clothing did not violate the Fourth Amendment, the Court pointed out that the normal processes incident to arrest and custody had not been completed when defendant was placed in a cell on the preceding night following his arrest and that the authorities were entitled not only to search defendant's clothing but also to take it from him and to keep it in official custody at the time defendant was placed in his cell, this with or without probable cause. The Court stated that the taking of defendant's clothing

"* * * was no more than taking from petitioner the effects in his immediate possession that constituted evidence of crime. This was and is a normal incident of a custodial arrest, and reasonable delay in effectuating it does not change the fact that Edwards was no more imposed upon than he could have been at the time and place of the arrest or immediately upon arrival at the place of detention. The police did no more on June 1 than they were entitled to do incident to the usual custodial arrest and incarceration." 415 U.S. 800, 94 S.Ct. 1234, 1238, 39 L.Ed.2d 771, 777.

We conclude that the holding in the Edwards case is applicable to the facts in the instant case. Accordingly, the order granting defendant's motion to suppress the clothing taken from defendant on May 14, 1973 is reversed and the case is remanded to circuit court for further proceedings.

All the Justices concur.